In the Matter of EASTERN MILK PRODUCERS COOPERATIVE ASSOCIATION, INC., Petitioner, v STATE OF NEW YORK DEPARTMENT OF AGRICULTURE AND MARKETS et al., Respondents.

Third Department, March 7, 1985

### APPEARANCES OF COUNSEL

*Williams, Micale & Wells* (*Frederick J. Micale* of counsel), for petitioner.

*Thomas G. Conway* (*Michael McCormick* of counsel), for respondents.

### OPINION OF THE COURT

KANE, J. P.

The relevant facts in this case are undisputed. Petitioner is a cooperative which sells milk on behalf of milk producers. Respondents, the State Department of Agriculture and Markets and its Commissioner, are vested with the power to regulate the dairy industry in the State, including the milk producers security fund (the fund) (Agriculture and Markets Law §§ 252, 258-b). The fund protects milk producers and cooperatives against the loss of payment for milk because of defaults by milk dealers (*see,* L 1975, ch 526, § 1).

On July 25, 1983, petitioner filed a verified statement of claim against the fund with the Commissioner, in the amount of

$693,063.24, based upon the default by Glen & Mohawk between May 1, 1983 and June 25, 1983. On August 11 and 22, 1983, hearings were held on the matter, after which the Commissioner initially, *inter alia,* held the bulk milk claims in abeyance. The Commissioner's final determination on the bulk milk claims partially denied petitioner certification of its claims. Specifically, petitioner's claims for milk delivered to Glen & Mohawk between May 1 and June 13, 1983, worth $523,604.11, were approved. Denied were the claims arising between June 14 and June 25, 1983, worth $169,459.13, including the claim for deliveries on June 14, 1983, worth $11,513.81. This CPLR article 78 proceeding ensued.

At issue here is whether the Commissioner properly refused to allow those claims of petitioner against the fund which arose between June 14 and June 25, 1983 due to the default of Glen & Mohawk.

Every milk dealer in the State is required to pay producers for milk received according to one of two specific methods. In this regard, Agriculture and Markets Law § 258-b (2) provides: "Prompt payment for milk. (a) Every milk dealer shall: (1) on or before the tenth day of each month, pay for all milk received from producers during the first fifteen days of the preceding month based upon not less than ninety percent of the applicable estimated prices which shall be announced by the commissioner and every such milk dealer shall, on or before the twenty-fifth day of each month, pay the balance owed producers for milk received during the preceding month; or (2) on or before the eighteenth day of the month, make final payment for all milk received from producers during the preceding month, provided that such dealer has notified the commissioner in writing thirty days before the beginning of the license year, that he elects to make one monthly payment to producers."

Here, it is undisputed that Glen & Mohawk did not file a single payment election. Accordingly, we agree with the Commissioner's determination that for the purposes of petitioner's claims against the fund, petitioner should have been receiving payments within the bimonthly schedule set forth in the statute, not the single payment election schedule. We note the record indicates that petitioner recognized this mandate. Specifically, Herbert Dorn, petitioner's financial manager, stated in his affidavit that petitioner billed Glen & Mohawk twice a month. Since petitioner should have been receiving bimonthly payments, under the facts of this case, petitioner was due payment, insofar as pertinent, on or before June 10, 1983.

Agriculture and Markets Law § 258-b (5) (b) provides, *inter alia,* that: "No claims against the producers security fund shall be allowed for \* \* \* (2) sales of milk by a producer to a milk dealer subsequent to its failure to pay within the time periods prescribed in subdivision two, where the commissioner finds, after due notice and opportunity of hearing, that such extension of credit, whether direct or indirect, to such milk dealer by the producer *did not constitute a reasonable exercise of business judgment"* (emphasis supplied).

In the instant case, the Commissioner found that since the *partial* payments due on June 10, a Friday, were not received by the following Monday, June 13, 1983, petitioner "should have invoked cash-on-delivery terms on Glen & Mohawk". As a result of this finding, the Commissioner disallowed all claims for milk sold after June 13, 1983. A necessary prerequisite to this determination is a finding that, by extending credit for deliveries beyond June 13, petitioner did not exercise reasonable business judgment (*see,* Agriculture and Markets Law § 258-b [5] [b]). Such a finding, however, conflicts with the Commissioner's prior finding in the same decision that petitioner's failure: "to invoke cash-on-delivery terms or withdraw milk from Glen & Mohawk when the dealer was tardy in making *final* payment for milk purchased during 1982 and 1983 is not sufficient cause within the meaning of Agriculture and Markets Law Section 258-b (5) (b) for concluding that they engaged in an unreasonable exercise of business judgment and for denying their claims with respect to bulk milk sales to the dealer in May and *June 1983.* Glen & Mohawk was chronically late by a few days in paying the cooperatives for milk, each of them routinely used collection procedures when payment was not received from the dealer by the due date, and their experience had been that payment was always received after the dealer was contacted. Representatives of the cooperatives each indicated that in their judgment there had been no reason to believe Glen & Mohawk would not ultimately pay for milk even though its practice was to be tardy by a few days" (emphasis supplied).

We perceive no rational basis for the Commissioner's conclusion that the same general business practice herein was reasonable with respect to the final payment, yet unreasonable with respect to the partial payment due on or before June 10, 1983 (*see,* Agriculture and Markets Law § 258-b [2] [a] [1]). To state the obvious, the Commissioner's conclusion with respect to petitioner's business practice subsequent to June 13, 1983 is contrary to his finding that petitioner's failure: "to invoke cash-on-delivery terms \* \* \* is not sufficient cause within the meaning of

Agriculture and Markets Law Section 258-b (5) (b) for concluding that [petitioner] engaged in an unreasonable exercise of business judgment and for denying [its] claims with respect to bulk milk sales to the dealer in May and *June 1983"* (emphasis supplied).

Accordingly, the determination, insofar as it was challenged (i.e., that portion which disallowed petitioner's claims arising on or after June 14, 1983), must be annulled and remitted to the Commissioner for further proceedings in accordance herewith.[*]

Before concluding our discussion of this case, we would be remiss if we did not express our agreement with the Commissioner's initial and undisputed finding that the business judgment of petitioner was proper under the circumstances. In our opinion, this conclusion applies equally to all deliveries at issue here.

MAIN, MIKOLL, YESAWICH, JR., and HARVEY, JJ., concur.

Determination modified, without costs, by annulling so much thereof as refused to certify petitioner's claims arising between June 14, 1983 and June 25, 1983; matter remitted to respondents for further proceedings not inconsistent herewith; and, as so modified, confirmed.

---

[*] We note that because petitioner was on the bimonthly payment scheme, the provisions of Agriculture and Markets Law § 258-b (5) (b) limit the claims of petitioner against the fund to "the amount owed for milk sold or delivered within the first forty-five consecutive day period for which payment was not received". The 45th consecutive day for which payment was not received would appear to be June 14, 1983, a date alluded to by the Commissioner in paragraph 10 of his supplemental decision. The supplemental decision did not, however, rely on the 45-day limit to deny petitioner's claims and, therefore, the court is powerless to confirm the determination by substituting what it deems to be a more appropriate basis (*Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588; *Matter of Cabrini Med. Center v New York State Dept. of Health,* 103 AD2d 989). The Commissioner seems to confuse this issue by stating in the preliminary statement to his brief that the 45-day period expired on June 13, 1983.